Maurice H. Van Bergh v. Commissioner.
Van Bergh v. Commissioner
Docket No. 33838.
United States Tax Court
T.C. Memo 1954-18; 1954 Tax Ct. Memo LEXIS 219; 13 T.C.M. (CCH) 398; T.C.M. (RIA) 54124; April 30, 1954, Filed David Alter, Esq., for the petitioner. R. H. Transue, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: This proceeding is before us on mandate from the Court of Appeals for the Second Circuit. The case was first considered by us, after hearing, and a report was promulgated on June 12, 1952. The issues then presented were (1) whether the provisions of section 107 of the Internal Revenue Code were available to petitioner in the computation of his tax for 1945, and (2) whether the provisions of section 275(c) of the Internal Revenue Code were operative so as to allow the determination of the deficiency more than 3 years after the return was filed. We held that section 275(c) was not applicable, that respondent's action was barred, *220 and consequently that it was unnecessary to consider the substantive question of whether section 107 was available to petitioner. After a hearing under Rule 50, we decided that there was an overpayment in income tax for the year 1945 in the amount of $1,369.32. This overpayment resulted from petitioner's being entitled to a "carry-back" of a "net operating loss" in his income for 1946, which element had been stipulated by the parties. Respondent appealed our decision and contended that notwithstanding the statute of limitations he might use any deficiency for 1945 as a setoff against such overpayment. In an opinion dated January 6, 1954 the Court of Appeals upheld respondent, and reversed our decision of overpayment, expressly refraining from passing on the merits as to whether section 107 was applicable. We accordingly granted a motion to reopen the proceeding for a determination on the merits of the section 107 question. Supplemental Findings of Fact Petitioner has been an economic consultant since 1932. On June 1, 1943 he was employed by and began rendering services to J. A. Harris, III, of Philadelphia, who was the principal stockholder and president of Jacobs Aircraft Engine *221 Company. Harris wanted to be kept informed as to the position of Jacobs Aircraft Engine Company in the aircraft field, its potentialities from an economic standpoint, and its relations from a business angle to the war. Harris employed petitioner as an economic consultant including keeping him posted as to what he should do in relation to his interests in the Jacobs Aircraft Engine Company. Petitioner's compensation was to be fixed either at the end of World War II or when Harris disposed of his holdings in Jacobs Aircraft Engine Company. Early in 1945 Harris decided to sell his interest in the Jacobs Aircraft Engine Company. Petitioner aided in the negotiations for the sale of the stock and was present with Harris and his attorney during a large part of the negotiations. Harris sold his stock in Jacobs Aircraft Engine Company during the latter part of April 1945. Under the terms of the sale, the purchasers had the right to require that Harris continue as president of the company for one year after July 1, 1945. In May 1945 petitioner and Harris orally agreed that petitioner would continue to be employed by Harris as an economic consultant until the end of 1946 and that petitioner *222 was to be paid in full in May 1945 for his services to the end of 1946. The check, dated May 11, 1945, in the amount of $37,675.05, was the only compensation ever received by petitioner from Harris. Harris became ill in the latter part of July 1945 and has not been active in business since. He spent part of the time in the hospital and part of it in Maine. After Harris became ill, petitioner kept Harris' secretary informed about Jacobs Aircraft Engine Company and the stock market generally. The first time petitioner saw Harris after his illness was for a few minutes in January 1946. Petitioner continued to render services for Harris until the end of 1946. Petitioner properly calculated his tax for the year 1945 under the provisions of section 107 of the Internal Revenue Code. Supplemental Opinion The remaining issue is purely factual and has been disposed of in our findings largely on the strength of the categorical sworn statements of petitioner. The question is whether as a matter of fact petitioner was employed and did render services covering a period of 36 months or more. Based upon petitioner's testimony we have found that his employment extended *223 from June 1, 1943 to December 31, 1946. Although recent letters from petitioner's employer introduced in evidence indicate that the latter is now somewhat vague as to the exact duration of petitioner's employment, these statements are at best obscure and do not impress us as inconsistent with petitioner's description of his employment. They certainly are not adequate to contradict the unambiguous character of petitioner's sworn testimony. See Foran v. Commissioner, (C.A. 5) 165 Fed. (2d) 705. Since there is no deficiency for the year 1945, the conceded carryback from the following year establishes an overpayment. Decision will be entered under Rule 50.